**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL E. SHARPE,** | : | |
| | : | **CIVIL ACTION NO. 1:06-CV-1493** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **SEAN A. COSTELLO, et al.,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |

**<u>MEMORANDUM</u>**

Plaintiff Michael Sharpe, currently an inmate at the United States Penitentiary Lee,

Jonesville, Virginia, and formerly an inmate at the United States Penitentiary at Canaan,

Waymart, Pennsylvania ("USP-Canaan"), filed this action pursuant to 28 U.S.C. § 1331 on

August 1, 2006, naming three Defendants employed by the United States Bureau of Prisons

("BOP").  (Doc. No. 1.)  Magistrate Judge Blewitt screened Plaintiff's original complaint

pursuant to 28 U.S.C. § 1915(e)(2) and recommended that the Court grant Plaintiff's request to

proceed <u>in forma pauperis</u> and dismiss all claims.  (Doc. No. 9.)  After a <u>de novo</u> review, the

Court adopted Magistrate Judge Blewitt's report and recommendation, with the exception that

the Court allowed Plaintiff an opportunity to amend his complaint.  (Doc. No. 17)

Presently before the Court is Plaintiff's amended complaint (Doc. No. 15) against

Defendants Costello, Lindsay, Karam, Lappin, and Dodrill (collectively "Defendants").[1]  In this

---

[1]  All Defendants are employees of the BOP.  They hold the following positions: Sean
Costello, supervising chaplain at USP-Canaan; Cameron Lindsay, executive warden of USP-
Canaan; Frank Karam, executive associate warden of USP-Canaan; Harley Lappin, executive
central office director of the BOP in Washington, DC; Scott Dodrill, executive regional office
director.  The Court notes that Plaintiff makes various allegations involving Lieutenant
Kizziyyah, Captain Lara, and Officer Barrette, none of whom are named as parties to the action.

Bivens action, Plaintiff seeks compensatory and punitive damages against the named Defendants,

who are all BOP officers and employees, for alleged violations of his First, Fifth, and Eighth

Amendment rights.  Because Plaintiff is a prisoner who is proceeding in forma pauperis, the

Court must screen his amended complaint pursuant to the Prison Litigation Reform Act,

specifically 28 U.S.C. § 1915(e)(2).

I.      BACKGROUND[2]

        Plaintiff alleges that on the evening of September 19, 2005, Defendant Costello, the

supervising chaplain of USP-Canaan, attempted to sexually assault him after the evening Islamic

prayer service.  Before the prayer service, Plaintiff had asked Defendant Costello if he had a Holy

Quran Plaintiff might use, and Defendant Costello asked him to "hold on a moment."  After the

prayer service and once the chapel area was empty, Defendant Costello invited Plaintiff to follow

him to his office where he retrieved a Holy Quran from above a file cabinet.  As Defendant

Costello handed Plaintiff the Holy Quran with one hand, he "attempted to grab plaintiff's penis

through plaintiff's clothing, which plaintiff deflected by turning aside and jumping back."

Because of Plaintiff's quick reaction, Defendant Costello ended up grabbing Plaintiff's shirt

above his crotch, which he used to forcibly pull Plaintiff towards him.  At some point during the

encounter, Defendant Costello stated that he was in charge and Plaintiff should do what he says.

Plaintiff fought off Defendant Costello's advances, broke free, and ran out of the office with

Defendant Costello "[giving] chase shouting obscenities and threatening remarks."

        The following day, Plaintiff approached a prison officer to request a form to file a

_____

        [2]  The following factual allegations are taken from Plaintiff's amended complaint and are
accepted as true for the purposes of this review.  (Doc. No. 15.)

2

grievance against Defendant Costello.  After describing the previous evening's incident three times to the officer, Plaintiff was given the grievance form.  The same day he filed the grievance, Plaintiff was ordered to report to the Lieutenant's office, where non-party Lieutenant Kizzayyah questioned Plaintiff about the incident, had Plaintiff sign an affidavit, and informed Plaintiff that he would be placed in the special housing unit pending the investigation of his grievance. Lieutenant Kizzayyah informed Plaintiff that the temporary relocation was "standard procedure" and stated that "the only way for plaintiff not to go to the hole was for Plaintiff to withdraw the complaint."  Plaintiff refused to withdraw the complaint and was taken to the special housing unit after a brief examination by the nurse.  While in the special housing unit, from November 2005 to March 2006, Plaintiff alleges he was denied access to the law library by order of Defendants Lindsay and Karam.

On September 24, 2005, four days after he filed the grievance, Plaintiff was awakened by Defendant Costello, who was taunting Plaintiff through his cell door.  Defendant Costello made obscene remarks and suggested "that plaintiff should have cooperated with [his] advances toward Plaintiff."  On November 12, 2005, Defendant Costello again appeared at Plaintiff's cell door in the special housing unit and made taunting and rude remarks.  Plaintiff's complaint indicates that at some point prior to this second taunting incident, he informed the special unit housing staff and Defendant Lindsay of Defendant Costello's verbal harassment.

On December 12, 2005, Plaintiff spoke with Defendants Lindsay and Karam about Defendant Costello's conduct and the special housing unit's "failure to deal with the situation." They indicated "that there was nothing that could be done about the situation" because Defendant Costello's job as chaplain required him to be in the special housing unit.

On January 3, 2006, members of the prison's executive staff were making their weekly "rounds" of the special housing unit.  Plaintiff stopped Ms. Nicklin, a coordinator of the prison's administrative remedy program, to inquire as to the status of his administrative complaints.  Non-party Captain Lara interrupted the conversation and informed Plaintiff "that his staff did not have to answer to an inmate."  Lara then spoke with non-party Officer Barrette and gestured to Plaintiff during the conversation.

Later that day, Officer Barrette ordered Plaintiff to turn around to be handcuffed, which Plaintiff did.  Plaintiff complained that the handcuffs were too tight and that the metal was cutting into his skin.  Officer Barrette ignored Plaintiff's request to loosen the cuffs and escorted him to a holding cell in the special housing unit.  Lara arrived at the holding cell and "threatened to hold off Plaintiff's transfer up until all grievances were answered unless Plaintiff agreed to withdraw his allegations."  Plaintiff refused to respond to Lara, and Officer Barrette escorted Plaintiff back to his cell.  Plaintiff estimates he spent about one and a half hours cuffed.

Shortly after returning to his regular cell, Plaintiff was ordered to pack up his property because he was being moved to a disciplinary segregation unit.  Plaintiff informed non-party Officer Kelly that he was bleeding and needed medical attention, which he received.[3]

In January 2006, Plaintiff spoke with his case manager Mrs. Smith about his transfer status.  She informed plaintiff that he was about to be transferred, had a ten point custody level, and would be eligible for medium custody prison.  Mrs. Smith later advised Plaintiff that the

---

[3]  Plaintiff does not state the cause of his bleeding or the injuries that were to be photographed by the prison's medical staff.  (Doc. No. 15, ¶30.)  For the purposes of this motion, the Court will infer that the bleeding was caused by the handcuffs that were "digging and cutting into plaintiff's skin" earlier that day.  (Id. ¶ 26.)

regional director[4] wanted Plaintiff moved to a higher custody institution for disciplinary purposes.  Plaintiff alleges that Defendants Lindsay, Dodrill, Karam, and non-party Lara "unlawfully increased Plaintiff's custody score from a level ('10') to a level ('17')" and gave Plaintiff a "vegue [sic] management variable" to place him over 500 miles from his release designation.  Plaintiff alleges that Defendants took these actions in retaliation for his grievances.

In paragraphs 34 and 35 of his amended complaint, Plaintiff asserts that since 1985, Defendants Lappin, Dodrill, Karam, Lindsay, non-party Lara, their predecessors, and other unknown prison officials entered into unlawful collective bargaining agreements with national and local unions that were designed to "repeal prisoners['] Constitutional and statutory rights." He further alleges that under these unlawful agreements, employees were not fired when they received inmate complaints or were videotaped engaging in "prohibited criminal (or) administrative misconduct of harassment, assault, murder, and medical negligence. . ."  Plaintiff alleges that these unlawful collective bargaining agreements compromised inmate safety and led to the events addressed in his amended complaint.

## II.    STANDARD OF REVIEW

A court is required to review a pro se plaintiff's complaint prior to service of process under 28 U.S.C. § 1915(e).  This section states, in relevant part:

> (2)    Notwithstanding any filing fee, or any portion thereof, that
> may have been paid, the court shall dismiss the case at any
> time if the court determines that –
>
> (A)    the allegation of poverty is untrue; or

---

[4]  Plaintiff does not identify the regional director by name.  The Court infers that it was Defendant Dodrill, whom the Plaintiff identifies as holding the position of "Executive Regional Office Director."  (Doc. No. 15, ¶ 10).

(B)     the action or appeal –

(I)     is frivolous or malicious;
(ii)    fails to state a claim on which relief may be
        granted; or
(iii)   seeks monetary relief against a defendant
        who is immune from such relief.

28 U.S.C. § 1915(e).  A complaint is frivolous "where it lacks an arguable basis either in law or

in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The standard of review for a

§ 1915(e)(2)(B)(ii) failure to state a claim is the same as the standard governing a Rule 12(b)(6)

motion.  Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002).

In determining the sufficiency of a pro se complaint, the Court is mindful to construe it

liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States

v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all the allegations in the

complaint and all reasonable inferences that can be drawn therefrom and view them in the light

most favorable to the plaintiff[,]" but it need not credit a pro se plaintiff's "bald assertions" or

"legal conclusions."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Dismissal is appropriate only if "it is clear that no relief could be granted under any set of facts

that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69,

73 (1984).

## III.    DISCUSSION[5]

To state an actionable Bivens claim, a plaintiff must allege that an individual, acting

---

[5]  A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant
to 42 U.S.C. § 1983, and the same legal principals have been held to apply.  See, e.g., Couden v.
Duffy, 446 F.3d 483, 492 (3d Cir. 2006).  Thus, the Court's use of § 1983 cases in its discussion
of Plaintiff's Bivens action is appropriate.

6

under color of federal law, deprived him of a federal right.  See West v. Atkins, 487 U.S. 42, 48 (1988); Couden v. Duffy, 446 F.3d 483, 491-92 (3d Cir. 2006).  A Bivens plaintiff must sue the government actor in his individual capacity, see, e.g., Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002), and set forth the government actor's personal involvement in the acts alleged.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (§ 1983 case).  Personal liability in a civil rights action will not be imposed upon a prison official based on a theory of respondeat superior. See Rode, 845 F.2d at 1207; see also, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir. 1976).  With these principals in mind, the Court will address the allegations in Plaintiff's amended complaint.

### A.      Counts I & II– Eighth Amendment violations

Plaintiff's attempt to amend his Eighth Amendment claims was futile; thus, much of the discussion in Magistrate Judge Blewitt's Report and Recommendation (Doc. No. 9) is equally applicable here.  The Court will briefly address Plaintiff's revised Eighth Amendment claims.

### 1.      Defendant Costello

Plaintiff has failed to set forth an Eighth Amendment violation with respect to Defendant Costello.  While it is true that sexual harassment may, in some circumstances, violate a prisoner's right to be free from cruel and unusual punishment, see Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997), this is not such a case.  For a prisoner to prevail on a sexual harassment Eighth Amendment claim, he must show that the alleged punishment was "objectively, sufficiently serious," and that the officer involved had a "sufficiently culpable state of mind."  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citations omitted).

Here, Defendant Costello's failed attempt to fondle Plaintiff and the subsequent, isolated

instances of verbal harassment do not rise to the level of a constitutional violation.  See Jackson v. Madery, 158 F. App'x 656, 661-62 (6th Cir. 2005) (allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Joseph v. U.S. Federal Bureau of Prisons, 232 F.3d 901, at *1-2 (10th Cir. 2000) (table opinion) (no Eighth Amendment violation stated where plaintiff alleged prison official "touched him several times in a suggestive manner and exposed her breasts to him"); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (a few incidents involving verbal harassment, touching, and pressing without consent not sufficiently serious to establish Eighth Amendment violation); Young v. Poff, No. 04-320, 2006 WL 1455482, at *4 (W.D.N.Y. May 22, 2006) (single groping incident did not amount to an Eighth Amendment violation); Calhoun v. Vicari, No. 05-4167, 2005 WL 2372870, at *1, *5 (D.N.J. Sept. 26, 2005) (sexual gestures, jokes, touching, and slapping on the buttocks were insufficiently serious to state an Eighth Amendment claim); Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *1, *4 (D. Kans. Sept. 7, 2004) (no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks); Harris v. Zappan, No. 97-4957, 1999 WL 391490, at *1, *3 (E.D. Pa. May 28, 1999) (sexually explicit comments, fondling, and rubbing prisoner's thigh and breasts did not rise to the level of an Eighth Amendment violation); Jones v. Culinary Manager II, 30 F. Supp. 2d 491, 493,497-98 (E.D. Pa. 1998) (allegation that a guard pinned plaintiff to box, ground his pelvis against plaintiff's buttocks, and threatened sex not sufficiently serious to be an Eighth Amendment violation); see also Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (concluding that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not amount to more than de minimus

injury," and does not state an Eighth Amendment claim); <u>Duncan v. Keane</u>, No. 95-1090, 1995 WL 649931, at *6 (S.D.N.Y. 1995) (defendant's feeling plaintiff's buttocks coupled with a general allegation of sexual harassment insufficient to state an Eighth Amendment violation).

While the conduct allegedly committed by Defendant Costello is indeed disturbing and inappropriate, and may, if proven, be the basis of state tort liability, the Court concludes that it is not sufficiently severe to amount to an Eighth Amendment violation. Count I of Plaintiff's amended complaint will be dismissed for failure to state a claim on which relief may be granted.

### 2.    *Defendants Lindsay, Karam, Lappin, and Dodrill*

Count II of Plaintiff's amended complaint essentially sets forth a deliberate indifference failure to protect claim. Plaintiff alleges that Defendants Lindsay, Karam, Lappin, and Dodrill (collectively "Count II Defendants") (1) failed to have adequate security in the chapel area on the night of the October 2005 incident; (2) should have known of Defendant Costello's "alleged sexual deviation" and protected Plaintiff from the assault and subsequent verbal taunting; and (3) entered into "unlawful binding Collective bargaining agreements" that they "should have known that sexual preditor [sic] groups would use to their advantage. . ." (Doc. No. 15, ¶ 48.)

These allegations against the Count II Defendants will be dismissed for essentially the same reasons his original failure to protect claim failed as to Defendants Lindsay and Karam. (<u>See</u> Doc. No. 9, at 5-10.) To state a deliberate indifference failure to protect claim, a plaintiff must show "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 842. Because Plaintiff has not alleged that the Count II Defendants were aware of and deliberately disregarded a substantial risk of serious harm befalling Plaintiff, he will be unable to make the required showing.

Plaintiff has not alleged that the Count II Defendants were aware of past incidences of sexual misconduct by Defendant Costello, nor has Plaintiff indicated that he had been sexually threatened or attacked by Defendant Costello, another prison employee, or fellow inmate prior to the October 2005 incident.  See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.")

In paragraphs 22 and 23 of his amended complaint, Plaintiff indicates that he had complained of Defendant Costello's verbal taunting to Defendant Lindsay and Karam, such that they were aware of this offensive behavior.  While the alleged incidents of taunting are, indeed, inappropriate, the two isolated incidents do not present the kind of substantial risk of serious harm against which the Eighth Amendment protects.  See Robinson v. Taylor, No. 05-4492, 2006 WL 3203900 (3d Cir. Nov. 7, 2006) ("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.").

Furthermore, to the extent Plaintiff seeks to impose liability on the Count II Defendants based on respondeat superior, his claim necessarily must fail.  See Rode, 845 F.2d at 1208; Ayers v. Goughlin, 780 F.2d 205, 210 (2d Cir. 1985) (per curium) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for the purposes of § 1983).  Accordingly, Plaintiff's Eighth Amendment claim against Defendants Lindsay, Karam, Lappin, and Dodrill will be dismissed.

### B.      Count III – First Amendment retaliation claim

Plaintiff's third count, called "First Amendment and retaliatory treatment . . . deliberate indifference," is not a model of clarity.  Plaintiff appears to be alleging, and the Court has

10

construed Count III as, a First Amendment retaliation claim.

To state a First Amendment retaliation claim, a plaintiff must show that the conduct which led to the alleged retaliation was constitutionally protected.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Plaintiff's filing a prisoner grievance against Defendant Costello satisfies this prong.  Robinson v. Taylor, No. 05-4492, 2006 WL 3203900 (3d Cir. Nov. 7, 2006) (holding that the prisoner-plaintiff's "filing of a grievance to complain about [prison employee's] behavior is constitutionally protected activity"); Mitchell v. Horne, 318 F.3d 523, 530 (3d Cir. 2003) (holding that the prisoner's "allegation that he was falsely charged with misconduct in retaliation for filing complaints against [a prison officer] implicates conduct protected by the First Amendment").

Next, a prisoner-plaintiff "must show that he suffered some adverse action at the hands of prison officials . . . sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  Rauser, 241 F.3d at 333 (internal quotation marks, citations, and brackets omitted).  Plaintiff has alleged that after he filed the grievance against Defendant Costello, Defendants Lappin, Dodrill, Lindsay, Karam, and non-party Lara retaliated against him by (1) specifically authorizing and/or engaging in attempts to intimidate Plaintiff into withdrawing his disciplinary complaint against Defendant Costello; (2) manipulating Plaintiff's custody score to have him placed in a higher security prison; (3) using a vague management variable to have Plaintiff placed outside of his 500-mile radius release designation; and (4) otherwise conspiring to retaliate against him.  In his complaint, Plaintiff also seems to suggest that Defendants Lindsay and Karam ordered that he not be permitted to use the law library in retaliation for the grievance

he filed,[6] and that Plaintiff's placement in the special housing unit and later in the disciplinary segregation unit were retaliation for his refusal to withdraw his grievance.  At this threshold screening, the Court will construe Plaintiff's allegations as satisfying the second prong of a retaliation claim and allow Plaintiff the opportunity to develop facts that would demonstrate that the Defendants' conduct would deter a reasonable inmate from pursuing grievances.  See Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003) (reading prisoner-plaintiff's complaint charitably and construing the alleged actions as being sufficiently adverse).

Finally, to state a First Amendment retaliation claim, the plaintiff must allege a causal link between the protected activity and the retaliatory acts, which Plaintiff has somewhat inarticulately alleged.  Because it appears that Plaintiff has stated a claim, the Court will direct the Clerk of Courts to serve Defendants with Plaintiff's amended complaint.

## IV.  CONCLUSION

Once again, Plaintiff has failed to state an Eighth Amendment claim either for Defendant Costello's alleged sexual advances and taunting or for Defendants Lindsay, Karam, Lappin, and Dodrill's alleged deliberate indifference and failure to protect Plaintiff from Defendant Costello. Accordingly, both of Plaintiff's Eighth Amendment claims will be dismissed.

Because Plaintiff's amended complaint appears to set forth a cognizable claim for First Amendment retaliation against Defendants Lindsay, Karam, Lappin, and Dodrill, Plaintiff's third claim will be allowed to proceed.  An appropriate order follows.

---

[6] Even outside of a retaliation context, Plaintiff's allegation that he was denied access to the law library may raise an issue of constitutional significance.  Kirby v. Blackledge, 530 F.2d 583, 586 (4th Cir. 1976) ("This is not to say that prisoners put in segregated detention ought to have an unrestricted right of access to library facilities.  Absolute denial, however, is impermissible.").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. SHARP, | : | |
| | : | CIVIL ACTION NO. 1:06-CV-1493 |
| Plaintiff | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| SEAN A. COSTELLO, et al., | : | |
| | : | |
| Defendants | : | |
| | : | |

**ORDER**

And now, this 11th day of April, upon consideration of Plaintiff's amended complaint

(Doc. No. 15) and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.  Plaintiff's Eighth Amendment sexual harassment claim against Defendant
    Costello (Count I) arising out of the September 19, 2005, incident and subsequent
    incidents of taunting is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.  Plaintiff's Eighth Amendment claim against Defendants Lindsay, Karam, Lappin,
    and Dodrill (Count II) for deliberate indifference and failure to protect is
    **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

3.  Plaintiff's First Amendment retaliation claim (Count III) shall be allowed to
    **PROCEED** against Defendants Lindsay, Karam, Lappin, and Dodrill.

4.  The United States Marshal is directed to serve Plaintiff's amended complaint
    (Doc. No. 15) and this Memorandum and Order on the following individual
    defendants: Cameron Lindsay, Frank Karam, Harley Lappin, and Scott Dodrill.

                    ___s/ Yvette Kane_____
                    Yvette Kane, Chief Judge
                    United States District Court
                    Middle District of Pennsylvania